```
                   UNITED STATES DISTRICT COURT
                FOR THE EASTERN DISTRICT OF MICHIGAN
                         NORTHERN DIVISION

UNITED STATES OF AMERICA,       .    Case No. 13-20834
                                .
          Plaintiff,            .
                                .
             v.                 .    Bay City, Michigan
                                .    January 23, 2014
TIMOTHY HEATH FINDLAY,          .
                                .
          Defendant.            .    (Hon. Thomas L. Ludington)
                                .
. . . . . . . . . . . . . . . .


                            GUILTY PLEA
             BEFORE THE HONORABLE CHARLES E. BINDER
                  UNITED STATES MAGISTRATE JUDGE


APPEARANCES:

For the Government:        ROY R. KRANZ
                           ASSISTANT U.S. ATTORNEY
                           101 First Street, Suite 200
                           Bay City, MI  48708
                           (989) 895-5712

For the Defendant:         KENNETH R. SASSE
                           FEDERAL DEFENDER OFFICE
                           653 S. Saginaw, Ste. 105
                           Flint, MI  48502-1523
                           (810) 232-3600

Court Recorder:            Jean Broucek
                           (989) 894-8821

NOT PRESENT:

Court Transcriber:         Karin Dains
                           (248) 914-0666


Proceedings recorded by digital sound recording; transcript
produced by transcription service
```

*Karin Dains – Court Transcriber*

TABLE OF CONTENTS

PROCEEDINGS - Thursday, January 23, 2014

|  | PAGE |
|---|---|
| Preliminary Questions by the Court | 3 |
| **TIMOTHY HEATH FINDLAY, DEFENDANT, SWORN** | 4 |
|     Examination by the Court | 4 |
|     Government's Summary of Rule 11 Plea Agreement | 9 |
|     Examination by the Court Continuing | 13 |
| The Court's Findings/Recommendations | 18 |

*Karin Dains – Court Transcriber*

```
 1                              Bay City, Michigan
 2                              Thursday, January 23, 2014
 3                              At about 2:33 P.M.
 4                                -   -   -
 5        (Call to order of the court)
 6            THE COURT:  This is the case of United States
 7   versus Timothy Findlay, Case Number 13-20834.
 8            The defendant is present with counsel.
 9            I have received an Order of Reference for the
10   Taking of a Plea from United States District Judge Ludington,
11   a Consent to Enter Guilty Plea before Magistrate Judge signed
12   by the defendant and both counsel, and I have reviewed a Rule
13   11 Plea Agreement in the matter.
14            May I, first of all, have the appearance of defense
15   counsel?
16            MR. SASSE:  Good afternoon, your Honor.
17   Kenneth Sasse appearing on behalf of Timothy Findlay.
18            THE COURT:  Thank you.
19            You are Timothy Findlay.  Is that correct?
20            THE DEFENDANT:  Yes, it is.
21            THE COURT:  It appears from these documents that
22   you wish to enter a plea of guilty to some charges, and it
23   appears from this consent that you're willing to give up your
24   right to have this plea taken and considered by the U.S.
25   District Judge, and you're willing to have the plea taken and
```

1  considered today by me.  Is that correct?
2              THE DEFENDANT:  Yes, sir.
3              THE COURT:  Now, you signed this written consent
4  five or six days ago.  Do you remember this?
5              THE DEFENDANT:  Yes, I do.
6              THE COURT:  Do you stand by that consent today?
7              THE DEFENDANT:  Yes, I do.
8              THE COURT:  Mr. Sasse, any objection to my swearing
9  the defendant?
10             MR. SASSE:  No, your Honor.
11             THE COURT:  All right.
12             Mr. Findlay, would you raise your right hand,
13 please?
14            **TIMOTHY HEATH FINDLAY, DEFENDANT, SWORN**
15             THE COURT:  All right.  Thank you.
16                           **EXAMINATION**
17 BY THE COURT:
18 Q.    Now, having been sworn, you have to tell the truth.  Any
19 false statements you make could be used against you in a
20 separate prosecution for perjury or for the making of false
21 statements.  Do you understand this?
22 A.    Yes, I do.
23 Q.    Now, may I have your full name for the record, please?
24 A.    Timothy Heath Findlay.
25 Q.    How old are you, sir?

```
 1  A.    Forty.
 2  Q.    How far have you gotten in school?
 3  A.    Eleventh grade.
 4  Q.    Have you been able to read and understand the documents
 5  that Mr. Sasse has been showing you?
 6  A.    Yes, I have.
 7  Q.    Have you been able to understand the things he's been
 8  talking about?
 9  A.    Yes, I have.
10  Q.    Are you under the influence of any medications or
11  anything that would give you trouble in understanding what's
12  going on today?
13  A.    No.
14  Q.    Are you under the regular care of a doctor for any
15  medical condition that might have an impact on your ability
16  to understand what's going on today?
17  A.    No.
18            THE COURT:  The record should reflect my conclusion
19  that the defendant is able to enter a knowing plea.  Do the
20  attorneys agree?
21            MR. KRANZ:  Yes, your Honor.
22            MR. SASSE:  Yes, your Honor.
23            THE COURT:  Thank you.
24  BY THE COURT:
25  Q.    Mr. Findlay, you are charged in Count Two of an
```

```
 1  indictment with threatening to kill the President.  Do you
 2  understand this charge?
 3  A.   Yes, I do.
 4  Q.   The charge is a felony.  It has penalties of up to five
 5  years' imprisonment followed by up to three years of
 6  supervised release, and you could face fines of up to two
 7  hundred fifty thousand dollars.  Do you understand this?
 8  A.   Yes, I do.
 9  Q.   Now, Mr. Sasse has been representing you throughout the
10  case.  Is that correct?
11  A.   Yes.
12  Q.   I presume you've had more than one opportunity to talk
13  to him about all of this.
14  A.   Yes, I have.
15  Q.   Are you satisfied with his advice and with his service?
16  A.   Yes, I am.
17  Q.   Good.
18            Now, if I accept your guilty plea, you're going to
19  be giving up many important rights.
20            As you know, everyone charged with a crime in our
21  system is entitled to a trial to determine if in fact they
22  are guilty of the criminal charges against them, and what
23  this Rule 11 agreement is telling me is that you're willing
24  to give up your right to a trial and everything that has to
25  do with a trial.  Do you understand this?
```

*Karin Dains – Court Transcriber*

**1** A.   Yes, I do.

**2** Q.   Specifically, you're giving up your right to plead not

**3** guilty and have a trial.  Do you understand this?

**4** A.   Yes, I do.

**5** Q.   You're giving up your right at a trial to be presumed

**6** innocent and your right to require that the government prove

**7** you guilty, and that is guilty beyond a reasonable doubt and

**8** guilty of every element -- that is every part -- of the

**9** charge.  Do you understand this?

**10** A.   Yes, I do.

**11** Q.   You're giving up your right through Mr. Sasse to

**12** question and probe and cross-examine witnesses the government

**13** would bring against you.  Do you understand this?

**14** A.   Yes.

**15** Q.   You're giving up your right to have the Court order

**16** witnesses you might need for your defense to come forward and

**17** testify at a trial.  Do you understand this?

**18** A.   Yes.

**19** Q.   You're also giving up your right to remain silent and

**20** not have your silence used against you during a trial.  Do

**21** you understand this?

**22** A.   Yes.

**23** Q.   At the same time, you're giving up your right to testify

**24** at a trial if you wish to, and if you did testify, what you

**25** said would be weighed with all the other evidence.  Do you

1  understand this?
2  A.   Yes.
3  Q.   And lastly, you're giving up your separate right to have
4  a lawyer for the trial, and if you could not afford one, a
5  lawyer would be appointed for you at government expense.  Do
6  you understand this?
7  A.   I do.
8  Q.   All right.
9       Now, in addition to these rights having to do with
10 a trial, it is entirely likely that if your guilty plea is
11 accepted, you will be giving up civil rights:  the right to
12 hold public office; the right to serve on a jury; if you're
13 sent to jail, you'll lose the right to vote while you're in
14 jail; and you will without doubt lose the right to ever
15 legally be around firearms again.  Do you understand this?
16 A.   I do.
17 Q.   All right.  So having in mind both these civil rights
18 and the trial rights that we've talked about, what you're
19 telling me is that you're willing to give up all these rights
20 as part of this plea agreement.  Am I correct?
21 A.   Yes.
22 Q.   Okay.  Now, I presume your willingness to enter a guilty
23 plea is because of what's in here in the Rule 11 agreement.
24 Am I correct?
25 A.   Yes.

1  Q.   All right.

2          THE COURT:  Mr. Kranz, would you be so kind as to

3  summarize the agreement for the record, please?

4          MR. KRANZ:  Yes, your Honor.

5          The plea of guilty will be to Count Two of the

6  indictment, charges the defendant with threatening to kill

7  the President of the United States, in violation of 18

8  U.S.C., Section 871(a).

9          Elements of that offense are at the top of page

10 two.

11         Parties agree the following facts are true and a

12 sufficient basis for the guilty plea:

13         In September 2013, Defendant was in the Ogemaw

14 County Jail for an unrelated bomb threat charge filed in

15 state court.  During the week of September 8th, Defendant

16 wrote two notes that were read by jail staff.  The first note

17 said, quote:  "I want to kill Judge Nobile and the President

18 with a bomb," end quote.

19         Second note said, quote, "I want to bomb the White

20 House," end quote.

21         Initially Defendant wrote on the walls of his jail

22 cell, quote, "Fuckin' kill the President bitches," end quote,

23 and, quote, "Kill Obama," end quote.

24         On September 13th, Findlay told Secret Service Agent

25 Lee Kuykendall that if he were drunk, he would definitely try

*Karin Dains – Court Transcriber*

1  and kill the President.  Defendant admitted he wanted to kill
2  Barrack Obama.  Further, Defendant stated that once he got
3  out of prison, he would get a rifle, borrow a car, drive to
4  Washington, D.C., and kill the President.
5             There's a couple additional stipulations, one that
6  was slightly modified that has been pen-and-ink changed, and
7  I can sign that.  The defendant and his attorney I believe
8  have already initialed that, and that one is that Defendant
9  wrote a letter to the President around 2011 or 2012 saying
10 that he was going to kill President Obama.  Defendant
11 intended to mail the letter, but a relative talked him out of
12 sending it; and the second one is November -- in November
13 2013, Defendant wrote another note which was discovered by a
14 jail guard which said, quote, "I'm going to kill all the
15 presidents of the United States," end quote.
16            The Court will find the sentencing factors by a
17 preponderance of the evidence.  There's no sentencing
18 guideline disputes.  Except as provided below, Defendant's
19 guideline range is twelve to eighteen months.
20            If the Court finds Defendant's criminal history
21 category is higher than that reflected in the worksheets or
22 the offense level should be higher because, after pleading
23 guilty, Defendant makes false statements, withholds
24 information from Probation, commits a new offense, or
25 otherwise demonstrates a lack of acceptance of responsibility

*Karin Dains – Court Transcriber*

1   for his offense or obstructs justice, and if any such finding
2   results in a higher guideline range, the higher guideline
3   range becomes the agreed range of the parties.
4           Based on the present circumstances, we're
5   recommending a two-level reduction for acceptance of
6   responsibility.  We may recommend against this if, after the
7   guilty plea, we learn of information inconsistent with the
8   adjustment.
9           Neither party may take a position contrary to any
10  position that's stated above except as is necessary for the
11  Court's determination regarding Defendant's criminal history,
12  acceptance of responsibility, and obstruction of justice.
13  Breach of this condition will entitle the non-breaching party
14  to withdraw from the plea agreement.
15          The Court will impose a sentence pursuant to
16  18 U.S.C., Section 3553, and in doing so, must consider the
17  sentencing guideline range.  There is a cap at the top end of
18  the sentencing guideline range as determined by Paragraph 2B
19  of this agreement.
20          A term of supervised release up to three years
21  shall follow the term of imprisonment.
22          The agreement discussed earlier regarding length of
23  imprisonment does not apply to any imprisonment that results
24  from any later revocation of supervised release.
25          Special assessment is a hundred dollars; maximum

1  fine is up to two hundred and fifty thousand dollars.
2  There's no restitution.
3       If the Court accepts the agreement, we will dismiss
4  Count One, not -- and we also agree not to bring any
5  additional charges based on any of the conduct reflected in
6  the attached worksheets in the stipulated facts.
7       Government may withdraw from the agreement if the
8  Court imposes a sentence below the applicable guideline
9  range.
10      Defendant may withdraw from the agreement and may
11 withdraw his guilty plea if the Court decides to impose a
12 sentence higher than the maximum allowed by the agreement.
13 This is the only reason for which Defendant may withdraw from
14 the agreement.  If he decides not to withdraw his guilty plea
15 pursuant to this provision, the sentence the Court imposes
16 may be greater than that allowed by the agreement.
17      The appeal and collateral attack waiver reads:
18           "Defendant waives the right to appeal his
19           conviction or sentence on any grounds.  If the
20           sentence imposed is within the guideline range
21           determined by Paragraph 2B, then the government
22           agrees not to appeal the sentence but retains its
23           right to appeal any sentence below that range.
24                "Defendant understands that defendants
25           generally have the right to attack their

**1**       convictions and sentences by filing post-conviction

2           motions, petitions, or independent civil actions.

3           As part of this agreement, however, Defendant

4           knowingly and voluntarily waives that right and

5           agrees not to contest his conviction or sentence in

6           any post-conviction proceeding, including but not

7           limited to any proceeding under 28 U.S.C.,

8           Section 2255."

9           I believe that sums up the key features of the

10 Rule 11, your Honor.

11           THE COURT:  All right.

12           Mr. Sasse, is this your understanding of the

13 agreement?

14           MR. SASSE:  It is, your Honor.

15           THE COURT:  Anything further relating to the

16 agreement you'd wish to put on the record?

17           MR. SASSE:  No, your Honor.

18                      **EXAMINATION CONTINUING**

19 BY THE COURT:

20 Q.   Mr. Findlay, is this your understanding of the

21 agreement?

22 A.   Yes, it is.

23 Q.   Did you hear anything just now from the assistant U.S.

24 attorney that was different than what you understood the

25 agreement to be?

*Karin Dains – Court Transcriber*

**1** A.   No.

**2** Q.   Have you been promised by anybody in the court or by

**3** your lawyer or the government's lawyer that you will get

**4** probation or a specific sentence in return for a guilty plea?

**5** A.   No.

**6** Q.   Has anybody made any promises to you that aren't in this

**7** agreement?

**8** A.   No.

**9** Q.   Has anybody used force or threats to try and make you

**10** plead guilty?

**11** A.   No.

**12** Q.   These plea agreements are always complicated, and they

**13** always have a lot of citations to statutes, calculations from

**14** the sentencing guidelines and things of that nature.  I need

**15** to boil down a couple of the key features of this agreement

**16** to make sure you fully understand the consequences of your

**17** plea.  The first has to do with an appeal.

**18**          If you are sentenced within the range that this is

**19** -- that is stated in this agreement, you will not be able to

**20** appeal what happens to you, ever.  Do you understand that?

**21** A.   Yes, I do.

**22** Q.   You won't be able to appeal right away nor will you be

**23** able to appeal later on in what's called a motion to vacate,

**24** or a habeas corpus, or a collateral attack.  None of those

**25** will be successful.  Do you understand that?

*Karin Dains – Court Transcriber*

1   A.   Yes, I do.
2   Q.   Okay. As I mentioned, there's calculations, citations,
3   a number of matters in this agreement dealing with the
4   sentencing guidelines, and I need to make sure you understand
5   that what is in here is only a recommendation to
6   Judge Ludington, who will be the judge who sentences you. Do
7   you understand that?
8   A.   Yes, I do.
9   Q.   He can by law do something different. He has the
10  authority to do what's called depart. Do you understand
11  that's possible?
12  A.   Yes, I do.
13  Q.   Okay. And what this all boils down to is that as of
14  today, none of us know what your actual sentence will be. Do
15  you understand that?
16  A.   Yes, I do.
17  Q.   Okay. Are you making this plea voluntarily?
18  A.   Yes, I am.
19  Q.   Is this an act of your own free will?
20  A.   Yes.
21  Q.   Okay. Tell me in your own words what you did that makes
22  you believe that you're guilty of this charge.
23  A.   I'm guilty because I'm the one who wrote it on -- on the
24  walls and said that I was going to kill the President, so,
25  yeah, I am guilty of this.

*Karin Dains – Court Transcriber*

1  Q. Okay. It says here that -- that you were in jail in
2  September of last year on an -- for an unrelated charge. Is
3  that right?
4  A. Yes.
5  Q. And that you wrote notes about killing a judge as well
6  as the President. Is that right?
7  A. Yes.
8  Q. And as you mentioned, it says here that you wrote stuff
9  on the walls of your cell. Is that right?
10 A. Yes, it is.
11 Q. And -- and -- and among the things you wrote were things
12 like, "Kill Obama," things of that nature. Am I right?
13 A. Yes.
14 Q. Okay. There's also in here a summary of an interview
15 that you had with a Secret Service agent. Is that correct?
16 A. Yes.
17 Q. Okay. And it says here that you had said that you'd --
18 you'd be wanting to kill the President if you got the chance.
19 Am I correct?
20 A. Yes.
21 Q. Okay. And the note and the interview, they took place
22 in the Ogemaw County Jail. Is that right?
23 A. Yes.
24 Q. Okay. What city did you live in before you were in
25 jail?

*Karin Dains – Court Transcriber*

1  A.    Actually, it's West Branch.
2  Q.    Okay.  All right.  That's good enough for these
3  purposes.
4  A.    Okay.  Well, okay.
5  Q.    Okay.
6              THE COURT:  Mr. Kranz, do you have any other
7  questions relating to factual basis?
8              MR. KRANZ:  No, your Honor.
9              THE COURT:  All right.
10             Mr. Sasse, questions relating to factual basis.
11             MR. SASSE:  No.  Thank you, your Honor.
12 BY THE COURT:
13 Q.    Mr. Findlay, we've talked about the charge; we've talked
14 about the penalty.  We've talked about the rights that
15 everyone has in our system and the rights that you say you're
16 willing to give up under this plea agreement, and we've
17 talked about my authority to proceed today, so with all of
18 that in mind, it's proper now for me to ask you how you plead
19 to this charge of threatening to kill the President.  How do
20 you plead, sir?
21 A.    Guilty.
22 Q.    Do you understand the plea you're making?
23 A.    Yes, I do.
24 Q.    Making this of your own free will.
25 A.    Yes.

```
 1  Q.    All right.
 2              THE COURT:  I find that the defendant, from his
 3  demeanor and his answers to my questions, is competent to
 4  tender a plea.  I find that the defendant's plea is knowing
 5  and is intelligently made and made after consultation with
 6  counsel.  I find that the -- the offense to which the
 7  defendant has pled guilty is supported by an independent
 8  basis in fact that contains each of the essential elements of
 9  the offense, and I will therefore order the preparation of a
10  Presentence Investigation Report, and I will in addition
11  recommend to Judge Ludington that the defendant's plea be
12  accepted, that the defendant be adjudged guilty and have
13  sentence imposed subject to Judge Ludington's final review
14  and consideration of the plea agreement under Rule 11(c) of
15  the Rules of Criminal Procedure.
16              Mr. Kranz, are you satisfied with my compliance
17  with Rule 11?
18              MR. KRANZ:  Yes, your Honor.
19              THE COURT:  Mr. Sasse, are you satisfied?
20              MR. SASSE:  Yes, your Honor.
21              THE COURT:  All right.
22              Mr. Findlay, the next step of your case is the
23  sentencing process, which begins with an interview between
24  yourself and a probation officer with Mr. Sasse present.
25  Probation officer will prepare a Presentence Investigation
```

1 Report which will be used by Judge Ludington in his decision
2 as to a sentence.
3     Once that report is completed, you will, first of
4 all, get your date for sentencing. The completion of the
5 report also triggers a brief period within which you and
6 Mr. Sasse can object to the report, talk about things you
7 think they got wrong, and include information you think they
8 missed, but your next trial -- or your next court appearance
9 -- excuse me -- is your sentencing. Do you understand that?
10     THE DEFENDANT: Yes, I do.
11     THE COURT: All right.
12     Mr. Kranz, then anything further as to this
13 defendant?
14     MR. KRANZ: No, your Honor.
15     THE COURT: Mr. Sasse, anything further?
16     MR. SASSE: No. Thank you.
17     THE COURT: Very well.
18     The defendant remains in custody pending
19 sentencing.
20     These proceedings are closed, and thank you,
21 Counsel.
22     THE CLERK: All rise.
23     Court is adjourned.
24     (Proceedings concluded at about 2:52 P.M.)
25     -  -  -

*Karin Dains – Court Transcriber*

1
2
3
4
5
6
7
8
9
10
11              I certify that the foregoing is a correct
12  transcript from the digital sound recording of the
13  proceedings in the above-entitled matter.
14
15
16  s/Karin Dains                          February 24, 2014
    Karin Dains, Court Transcriber         Date Certified
17
18
19
20
21
22
23
24
25

*Karin Dains – Court Transcriber*